UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

STATESBORO DIVISION

| LORNE VERNAE STONE, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. CV608-088 |
| HUGH SMITH, DR. TOMMY LEE JONES, and DR. GILBERT GONZALEZ, | ) ) ) ) ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Before the Court is Lorne Vernae Stone's amended complaint, brought pursuant to 42 U.S.C. § 1983 and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq.* (Docs. 24 & 38.)[1] To recapitulate the somewhat complicated procedural history of this case, Stone's initial complaint alleged that "the Georgia Department of Corrections ha[d] conspired with the United States Federal Government and organized crime, all in participation to sterile [sic] his reproductive

---

[1] Stone submitted a "motion for reconsideration of pro se amended complaint" in which he offered additional factual averments. (Doc. 38.) The Court construes the filing as a motion to amend, and it is hereby **GRANTED**.

genes." (Doc. 1-2 at 9.) Finding these allegations patently incredible, the Court recommended by Report and Recommendation ("R&R") to the district judge that the complaint be dismissed. (Doc. 15 at 4.) Stone, apparently hoping to avoid a 28 U.S.C. § 1915(g) strike, moved to voluntarily dismiss the case (doc. 19), which prompted the Court to enter an amended R&R. (Doc. 20.) In Stone's objections to the amended R&R, he offered an amended complaint. (Doc. 24 at 6-10.) There he explained that his fanciful allegations resulted from mental health problems which have now been resolved. (*Id.* at 2.) The district judge adopted the amended R&R but, after Stone filed an appeal, requested that the Eleventh Circuit remand the case so that this Court could consider Stone's amended complaint. The Eleventh Circuit accepted the invitation to remand, and the case is now back before this Court. *Stone v. Smith*, No. 09-11316-G (11th Cir. Jun. 15, 2009). Since the remand, Stone has filed yet another amendment, which the Court will consider during its renewed screening. (Doc. 38.)

The Prison Litigation Reform Act requires the federal courts to conduct early screening of all prisoner suits against governmental entities or officials for the purpose of identifying claims that are subject

to immediate dismissal as frivolous, malicious, or legally insufficient. 28 U.S.C. § 1915A (courts must identify "cognizable claims" filed by prisoners or other detainees and dismiss claims which are frivolous, malicious, fail to state a claim for relief, or seek monetary relief from a defendant immune from such relief); *see also* 42 U.S.C. § 1997e(c)(2) (allowing dismissal on the same four standards provided by § 1915A as to any prisoner suit brought "with respect to prison conditions"). The Court will therefore examine Stones's amended complaint to determine whether he has stated a colorable claim for relief.

Stone has dropped the conspiracy claim and simplified his factual allegations. (Doc. 24 at 6-10.) He now states that starting in 2002 he complained of "pain and blood in his bladder" and urine. (*Id.* at 8.) Dr. Tommy Lee Jones, the medical director at Georgia State Prison where Stone was incarcerated, allegedly "failed to adequately act, [and] he displayed a deliberate indifference attitude towards plaintiff's serious medical needs . . . by delaying adequate treatment for almost 7 years. As a result[,] plaintiff has developed 'herpes.'"[2] (*Id.*) Stone states that he

---

[2] Such an allegation borders upon factual frivolity, but the Court will give Stone the benefit of the doubt.

was tested for herpes on several occasions during his incarceration, but the tests always came back negative. (Doc. 38 at 4-5.) He states that Dr. Jones and Warden Smith intentionally misdiagnosed him and deprived him "due herpes treatment." (*Id.* at 5.) Eventually, Stone was taken to a regional medical center "under contract with the Georgia Department of Corrections," where he was seen by Dr. Gilbert Gonzalez, a urologist. (Doc. 24 at 8.) Gonzales also "fail[ed] to properly diagnose plaintiff['s] condition which has now developed into herpes, and he failed to act in expediting the required surgery needed to stop any further damage." (*Id.* at 8-9.) Stone filed several grievances with Warden Hugh Smith, but the warden "did not follow the Standard Operating Procedure (SOP) of the Department of Correction in addressing plaintiff's grievance, and he failed to adequately supervise his medical staff at Georgia State Prison." (*Id.* at 9.)

Because of the allegedly inadequate medical treatment, Stone states that his condition "has become irreversable [sic] and he has lost the ability to reproduce offspring, suffered much physical pain, mental and emotional duress, psychological harm and loss of companionship with females who want children." (*Id.*) Consequently, he seeks

4

compensatory and punitive damages against each defendant and a declaratory judgment that "the custom and practice of defendant Hugh Smith in addressing grievances is unconstitutional." (*Id.* at 10.)

At the outset, Stone's contention that Warden Smith refused to follow the proper grievance procedure fails to state a constitutional claim. Prison grievance procedures are not constitutionally mandated. *Baker v. Rexroad*, 159 F. App'x 61, 62 (11th Cir. 2005); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (holding that the Constitution creates no entitlement or access to grievance procedures). Since these procedures are not mandated, they do not create a liberty interest that can give rise to a due process violation. *See Baker*, 159 F. App'x at 62. Thus, Stone's claims relating to the adequacy of Smith's adherence to the prison grievance procedures furnish no grounds for relief. *Jones v. St. Lawrence*, 2008 WL 5142396 at *7 (S.D. Ga. Dec. 5, 2008) (unpublished).

The claim against Dr. Gonzalez also fails, since plaintiff freely admits Gonzalez is a private practice physician. To prevail in a § 1983 action, a plaintiff must establish both a violation of a right secured by the Constitution or the laws of the United States and demonstrate that the alleged violation was committed by a person acting under color of state

law. *Bannum, Inc. v. City of Ft. Lauderdale*, 901 F.2d 989, 996-97 (11th Cir. 1990). Stone insists that the hospital where Gonzalez practices was under contract with the prison system to provide services to inmates, but he has neither specifically alleged in his complaint that Dr. Gonzalez was himself acting under color of state law nor furnished any information which would allow the Court to infer that Gonzalez was a state actor. A physician under contract with a state to provide medical services to state prison inmates acts under color of state law for purposes of § 1983 when undertaking his duties in treating an inmate's health. *West v. Atkins*, 487 U.S. 42, 54 (1988). However, a private physician unaffiliated with any state institution is not acting under color of state law merely because he provides medical services to a state prisoner. *See Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992). As a private physician who saw Stone in a non-prison setting, Dr. Gonzalez is not a state actor and, therefore, is not subject to § 1983 liability.

Stone has also failed to state a claim for relief as to any of the remaining defendants under either of the federal statutes he relies upon. Stone first invokes 42 U.S.C. § 1983, which permits recovery against state officers who violate the Eighth Amendment's proscription against

cruel and unusual punishment by subjecting an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Here, Stone states that the wardens and a prison doctor intentionally misdiagnosed him, delayed his access to necessary medical treatment, and were deliberately indifferent to his medical needs.[3] (Doc. 24 at 8-10; doc. 38 at 2-5.) Next, he relies upon Title II of the ADA, which "prohibits a 'public entity' from discriminating against a 'qualified individual with a disability' on account of that individual's disability." *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 208 (1998). He states that he is disabled and the defendants discriminated against him in violation of Title II.[4] (Doc. 38 at 4.)

Such legal conclusions, though couched as factual allegations, are not entitled to be accepted as true. *Ashcroft v. Iqbal*, 129 S.Ct. 1950

---

[3] In addition, he states that he is suing the defendants for "inadequate supervision, deliberate indifference to serious medical needs, failure to act, failure to protect, discrimination, denial of due process, cruel and unusual punishment, gross incompetence, medical malpractice, and failure to enforce standard operating procedure." (Doc. 38 at 2.)

[4] Prisoners may sue prison officials under Title II of the ADA. *See Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 213 (1998).

7

(2009). While pro se pleadings are held to a less stringent standard than pleadings drafted by an attorney, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), a "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964-65 (2007) (quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" under Rule 8 of the Federal Rules of Civil Procedure. *Iqbal*, 129 S.Ct. at 1949-50. That is, "the plaintiff's factual allegations, when assumed to be true, 'must be enough to raise a right to relief above the speculative level.'" *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1270 (11th Cir. 2009) (quoting *Twombly*, 127 S.Ct. at 1964-65). Thus, while a detailed recitation of the facts is not necessary under the notice pleading standard, *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007), a plaintiff must allege a non-conclusory claim showing that he is entitled to relief. *Rogers v. Nacchio*, 241 F. App'x 602, 607 (11th Cir. 2007); *Lambert v. United States*, 98 F. App'x 835, 839 (11th Cir. 2006) (inmate's conclusory allegations were insufficient to establish a medical

8

malpractice claim). "Rule 8 . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949. Here, Stone has not offered non-conclusory factual averments that nudge his claim from merely possible to a plausible entitlement to relief. *Id.* at 1949-50.

In order to state an Eighth Amendment § 1983 claim "that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and subjective inquiry." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003); *Taylor v. Adams*, 221 F.3d 1254, 1257 (11th Cir. 2000); *Adams v. Poag*, 61 F.3d 1537, 1543 (11th Cir. 1995). "First, a plaintiff must set forth evidence of an objectively serious medical need." *Farrow*, 320 F.3d at 1243; *Taylor*, 221 F.3d at 1258; *Adams*, 61 F.3d at 1543. "Second, a plaintiff must prove that the prison official acted with an attitude of 'deliberate indifference' to that serious medical need." *Farrow*, 320 F.3d at 1243; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *McElligott v. Foley*, 182 F.3d 1248, 1254 (11th Cir. 1999); *Campbell v. Sikes*, 169 F.3d 1353, 1363 (11th Cir. 1999). And as is true in all tort actions, the plaintiff must also establish that the defendant's

indifference caused his injury. *Goebert v. Lee County*, 510 F.3d 1312, 1326 (11th Cir. 2007).

Stone, who may have an objectively serious medical need, fails on the subjective and causal components. He describes his injuries and states that he told Dr. Jones, the medical director, of "pain and blood in his bladder in urination." (Doc. 24 at 8.) He states that the medical director noticed a rash on his penis, but he admits that the director tested him for herpes on several occasions and the tests always came back negative. (Doc. 38 at 4-5.) Those allegations do not show the level of disregard necessary to make out an Eighth Amendment claim. Had Stone presented facts showing that the defendants knew that he had developed herpes and then refused to treat the condition despite their knowledge that such treatment was medically necessary, then he would have stated a plausible claim. The Court, however, cannot simply "fill in the blanks" by inferring such allegations. *See Bivens v. Roberts*, 2009 WL 411527 at * 3 (S.D. Ga. Feb. 18, 2009) (unpublished) ("judges must not raise issues and arguments on plaintiffs' behalf, but may only construe pleadings liberally given the linguistic imprecision that untrained legal minds sometimes employ") (citing *Miller v. Donald*, 541

F.3d 1091, 1100 (11th Cir. 2008)).

Stone's allegations support, at most, a showing of medical malpractice, and a § 1983 claim "does not lie if a prisoner's complaint is directed at the wisdom or quality of medical treatment he received in prison, even if that treatment is so negligent as to amount to medical malpractice." *Brown v. Prison Health Servs., Inc.*, 2008 WL 131169, at *3 (S.D. Ga. 2008) (quoting *Brinton v. Gaffney*, 544 F. Supp. 388, 389 (E.D. Pa. 1983)). Similarly, although he states that Warden Smith failed to supervise the medical staff, he does not offer any factual allegations supporting those assertions (nor does he specify which prison procedure Smith violated in addressing his grievances). (Doc. 24 at 9.) More fundamentally, Smith cannot be held liable for the actions of his subordinates when those actions do not amount to a constitutional violation.

Turning to the Title II claim, Stone does not offer any facts showing that he was discriminated against based upon a qualified disability. *Yeskey*, 524 U.S. at 208. Instead, Stone states that Warden Smith "showed a deliberate indifference attitude towards plaintiff['s] serious medical needs because of his race in violation of the Americans

with Disability's [sic] Act Title II." (Doc. 24 at 9.) Not only is that statement conclusory, it demonstrates a fundamental misunderstanding of the ADA, which does not protect prisoners from racial discrimination but from discrimination based upon certain disabilities. *See Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 208 (1998) (the ADA "prohibits a 'public entity' from discriminating against a 'qualified individual with a disability' on account of that individual's disability"). Moreover, Stone has not presented any facts showing that any of the defendants actually discriminated against him based upon his race or disability, other than his conclusory allegations. He has not presented any direct evidence of discrimination, nor has he shown that someone outside of his protected class (i.e., someone not disabled or not a minority) received better treatment.

Stone has failed to state a plausible claim for relief. Consequently, this case should be **DISMISSED** with prejudice and thus should count as a strike under 28 U.S.C. § 1915(g).

**SO REPORTED AND RECOMMENDED** this <u>24th</u> day of September, 2009.

/s/ G.R. SMITH
**UNITED STATES MAGISTRATE JUDGE**
**SOUTHERN DISTRICT OF GEORGIA**